NORMAN S. BOWLES ET AL. *v.* M. P. MOLLER, INC., ET AL.

[No. 73, October Term, 1932.]

*Decided February 15th, 1933.*

The cause was argued before BOND, C. J., ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Norman S. Bowles* and *James L. Skinner,* for the appellants.

*J. Lloyd Harshman,* with whom was *John Wagaman* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

The facts leading up to this appeal may be thus stated: On February 2nd, 1932, a bill of complaint was filed in the Circuit Court for Washington County by M. P. Moller, Inc., against the M. P. Moller Company. The bill states that the plaintiff is a corporation duly incorporated under the laws of the State of Maryland, with its principal office in Hagerstown, Washington County, Maryland, that it sues for itself as well as for all other creditors of the defendant, which is also a corporation incorporated under the laws aforesaid, with its business located in the same town; that the defendant is indebted to the plaintiff on open accounts in the amount of $103,658.97; that the defendant is also indebted to other persons, firms, and corporations to the amount of approximately $2,000; that the present assets of the defendant consist of accounts receivable of $2,725.10, accrued interest receivable of $2,377.72, merchandise inventory consisting of instruments, supplies, and all other stock in trade, $23,-988.58, equipment, fixtures, etc., $639.95, automobile delivery trucks worth approximately $400, making the total assets of the defendant approximately $30,131.35; that, in addition to these assets, it owns installments on conditional sale contracts which have accrued to this date, but the value of which installments is not, at the time of the filing of the bill, known, and the collection of a large percentage of which "is to say the least very doubtful and problematical"; that the defendant is insolvent and unable to meet and discharge its debts and obligations; that it is necessary for the protec-

tion of the interest of the plaintiff as well as other creditors of the defendant that a rceiver be appointed immediately to take charge of the property and assets of the defendant "so as to preserve the same and dispose of the same to the best advantage under the power, authority and direction" of the court. The prayers of the bill are that a receiver be appointed to take immediate charge of the property and assets of the defendant for the purpose of conserving and liquidating the same under the direction of the court, and for further relief. The allegations contained in the bill are sworn to by E. O. Schullenberger, secretary of the plaintiff, stating that he is the secretary of the plaintiff, has personal knowledge of the matters and facts therein alleged, and that he is a duly authorized officer and agent of the plaintiff to make such affidavit.

At the same time the bill of complaint was filed, an answer of the defendant was also filed, wherein it is stated that it admits the allegations, matters, and facts set forth in each and all of the paragraphs of the bill, and submits its rights to the court for such action as the court may deem fit and proper in the premises. The answer is sworn to by the vice-president of the defendant.

On the same day the Circuit Court for Washington County, on the bill and answer, signed a decree appointing John Wagaman and J. Lloyd Harshman receivers of the defendant company, "with power and authority to take charge and possession of all the estate and property, stock in trade, cash, fixtures and equipment of or belonging to The M. P. Moller Company, a corporation, and to collect all outstanding obligations and debts owing to the said The M. P. Moller Company, which company is hereby required to yield up and deliver to the said receivers all its goods, wares, merchandise, stock in trade, fixtures, equipment, accounts, books, papers, and all of its assets of whatsoever kind and nature, subject to the order and direction of this court; that the said receivers proceed as expeditiously as may be reasonable with the liquidation of the business of the M. P. Moller Company and with the collection of the bills receivable as fast as said

collections may be reasonably made, and as soon as may be convenient, after making such liquidation, the receivers shall report to the court under oath a full and particular account of their proceedings under this decree, and bring into this court the money arising from said liquidation as well as from said collections, the same to be disposed of under the direction of the court, after deducting the costs of this suit, counsel fees and such commissions to the receivers as the court shall allow." The decree further provided that the receivers, before proceeding to act, should give bond for the faithful performance of the duties reposed in them by the order and decree, or any future order and decree in the premises, in the penalty of $30,000. The bond, with corporate surety, was filed and approved by the court on February 3rd, 1932.

On February 5th, 1932, the receivers filed a petition reciting that they had filed bond and taken charge of the business; that the "receivers now have a *bona fide* offer from a party to purchase all the assets of the defendant corporation consisting of goods, wares, merchandise, stock in trade, fixtures, equipment and accounts receivable whether on conditional sales contracts or otherwise, at and for the sum of $41,324.83, which said sum includes and embraces the sum of $6,102.60 representing the exact appraised value of all of the stock in trade, goods, wares, merchandise, equipment and fixtures, which appraisement your receivers had made by three competent appraisers and which has been already filed in this proceeding; and also embraces the sum of $35,222.23 offered your receivers for the purchase of the aforesaid accounts receivable to the defendant corporation, approximately $100,000 of which accounts are represented by installment payments on conditional sales contracts some of which payments are past due and some of which cover a period of as high as thirty months in the future from this date, as well as approximately $5,000 of unsecured open accounts due and owing to said defendant corporation"; that "your petitioners are advised and believe that the aforesaid sum of $35,222.23 offered them for the purchase of the aforesaid accounts receivable is eminently fair and reasonable and amounts to

probably more than what your receivers would be able to realize from said accounts should they be required to undertake the collection of them"; that M. P. Moller, Inc., the party making the aforesaid offer, is represented to the petitioners, and they believe it so, to be entirely able and capable from a financial standpoint to carry through its offer, $5,000 of which said sum has already been paid to the receivers, who are holding the same subject to the action of the court, and the balance is payable in two equal installments of $18,162.42 each, represented by promissory notes which will be given by M. P. Moller, Inc., and payable respectively in three and four months after the date on which the court may take action; that appended to the petition as a part thereof is a certificate of M. P. Moller, Inc., the largest creditor of the defendant corporation, in which it agrees to give prior right to all other creditors of the defendant, to the end that all other common creditors may be paid their accounts in full before anything out of the proceeds of this sale is distributed to M. P. Moller, Inc.; that also appended to the petition as a part thereof is the certificate or answer of the defendant corporation in which it states that it is familiar with the entire business and accounts of the defendant corporation, the property of said corporation, including accounts payable on installment contracts, and that, from its experience covering a period of approximately twenty years in handling conditional sales contracts, and taking into consideration that the offer to the receivers is a cash offer, it recommends that the court pass an order authorizing and directing the receivers to accept said proposition; that the receivers have made an investigation from persons who are in a position to know the success with which collections can be made on conditional contracts after they have been turned over to the receivers, and those persons "do not hesitate, after taking everything into consideration, to recommend to this honorable court that it pass an order authorizing, empowering and directing them to accept said proposition of M. P. Moller, Inc." The prayer of the petition is that the receivers be authorized and empowered to accept the offer

of M. P. Moller, Inc., to purchase the assets of the defendant at and for the sum of $41,324.83, payable as set forth in the petition. This petition is sworn to by the receivers.

On the same day, upon said petition and affidavit, and the certificate and affidavit of the proposed purchaser, as well as the answer and affidavit of the defendant company, the court ordered and decreed that the receivers "be and they are hereby authorized, empowered and directed to sell all the assets, stock in trade, goods, wares, merchandise, fixtures, equipment and accounts receivable of The M. P. Moller Company, the defendant corporation in this proceeding, unto M. P. Moller, Inc., at and for the sum of $41,324.83, said sum to be payable as follows: $5,000.00 cash and the balance in two equal installments of $18,162.42, each, in three and four months respectively from the date hereof, said deferred payments to be secured by the notes of the said M. P. Moller, Inc., and upon receipt of the payments as aforesaid, the said receivers are hereby authorized and empowered to make proper assignment of all outstanding conditional sales contracts unto the purchaser, M. P. Moller, Inc."

On February 24th, 1932, the appellants filed a petition to intervene, wherein it was stated that Norman S. Bowles and James L. Skinner respectfully petition this honorable court for the right to intervene and to become defendants in the above-entitled cause, with a right to file an answer and defend said action, and for reasons say: (1) That they are the owners of twenty-five per cent. of the total capital stock of the defendant corporation, represented by 125 shares of the capital stock of said corporation, which they purchased from one George Funkhouser for a total consideration of $11,000; (2) that the proceedings in this case indicate upon their face fraud, to wit, bill of complaint filed February 2nd, 1932, sworn to by E. O. Shulenberger, who is the secretary of both plaintiff and defendant corporations; that the same day an answer was filed sworn to by M. P. Moller, Jr., officer and director of both plaintiff and defendant corporations; and the said answer was filed in the interest of the plaintiff corporation and was not filed in the interest of the defendant,

and both papers indicate an attempt to defraud your petitioners; February 2nd, 1932, an order of court was made appointing the son-in-law of the principal stockholder of the plaintiff corporation, M. P. Moller, Sr., as a joint receiver, without consideration of petitioners and without notice to them; that the officers of the plaintiff corporation had full knowledge that one of the petitioners was the owner of the 125 shares of stock, as the certificate representing those shares was in the hands of the officers of the defendant company for transfer to the petitioners; that the petitioners believe that the court was misinformed as to the interest that was outstanding, and, when said order was signed, believed that all parties at interest were either in court or had been properly notified; that three days later, February 5th, 1932, the receivers submitted a recommendation and petition to the court to sell some $150,000 in assets of the defendant corporation, consisting principally of secured and unsecured accounts, to the plaintiff corporation for the sum of $5,000 cash and two notes of the plaintiff for $36,000, and the petitioners say that these accounts of the defendant corporation are of such a nature that they could be collected within two years, and that more than the amount offered could be borrowed against these accounts; that the pleadings indicate that no effort was made to protect the defendant corporation, or to obtain the best price for its assets, no advertising, no offering to the public, and the entire proceeding was handled by the joint action of the plaintiff and the receivers acting in the interest of the plaintiff and not in the interest of the defendant; that on February 5th, 1932, the plaintiff, by an officer who was an officer of both corporations, filed an offer to pay $41,-324.83 for the entire assets of the defendant, and agreed to pay off all other common creditors in full before any distribution to the plaintiff corporation; that this was done to mislead the court into believing that all interested parties had been satisfied, but that the interests of the petitioners, who hold twenty-five per cent. of the stock of the defendant corporation, were totally disregarded, and the common creditors, these petitioners are informed, are the officers and

relatives of the officers of the plaintiff corporation; that on February 5th, 1932, a paper filed by the defendant through its alleged solicitor, Samuel C. Strite, and sworn to by one of the officers of the plaintiff corporation, recommended to the court that the offer be accepted, and, on the same day, the court, having been informed that all interests had been considered, and that no valid reason existed for not accepting said offer to sell or purchase, signed an order authorizing the sale of the defendant's assets to the plaintiff for $5,000 cash and notes of some $36,000, and the petitioners say that a fraud was perpetrated upon the court when this order was presented, as the petitioners are informed that no mention was made to the court of any outside interest, and the court was informed that all interested parties had been satisfied; that there is no need for such hurried action on the part of the receivers; that the defendant corporation is in no different condition from what it has been for the past few years and is now or was before the filing of the bill of complaint in this cause; that a great injustice will be done the petitioners if a proper answer is not filed to plaintiff's bill; and' that, if given an opportunity, the petitioners, as parties defendant, will and can file a good and lawful answer to the plaintiff's bill setting forth facts which they believe will defeat the plaintiff's action. The petition further alleges that the plaintiff and defendant corporations are one and the same; that, if the officers and former officers of the two corporations are properly examined upon oath, or a bill of discovery filed, facts will be developed showing that for some ten years or more the two corporations have been operated as one and the same, with the same directors, officers, stockholders, holding joint directors' and stockholders' meetings, being directed from the same offices; that the plaintiff corporation, as a corporation, has been actually operating and directing the affairs of the defendant corporation for some three years or more; and finally it is alleged that the suit was instituted solely for the purpose of defrauding the holders of this twenty-five per cent. of the capital stock of the defendant corporation owned by the petitioners, as the entire balance of the

stock and all other interests have been acquired by the plaintiff or its officers, and that they were unable to acquire the petitioners' stock without paying a reasonable value therefor; that the plaintiff corporation attempted and has about succeeded in forcing all outside interests to sell their stock to the plaintiff corporation at their price and on their terms, regardless of its market value, and that this action was instituted for the purpose of making the petitioners' stock valueless, so that the plaintiff and its officers could acquire the said stock or acquire all the assets of the defendant without paying a fair price therefor, and that to this end the bill of complaint was filed and no proper answer was attempted to be made; that the alleged solicitor for the defendant, the petitioners are informed and therefore believe, is being paid by the plaintiff or its officers, and that the actual answer was in fact drawn by the plaintiff or its agents and attorneys. The prayers of this petition are: (1) That the petitioners be made parties defendant with leave to file an answer for themselves and for the defendant corporation within thirty days from the date of the petition; (2) that an outsider, one not interested in the plaintiff, be made an additional receiver with the two receivers now appointed; (3) that the order of court authorizing the sale of the assets of the defendant be set aside and vacated; (4) that the petitioners be given access to the defendant's books and be furnished with full information now in the hands of the receivers; (5) that the books and records of the plaintiff corporation be examined, together with copies of all directors' and stockholders' meetings, to the end that the court may learn whether or not the plaintiff and defendant corporations have not become merged into one corporation, and that the receivers be instructed to take possession of the assets of the plaintiff corporation and to wind up the two corporations as one, and that the court take such other and further action as it may deem fit and proper in the premises.

The plaintiff corporation and the receivers filed their joint answer to this petition on March 5th, 1932, wherein they admit that one of the petitioners, James L. Skinner, is the

owner of 125 shares of the capital stock of the defendant company; they deny that the company has purchased or is the owner of any shares of its own capital stock; they state that the proceedings in this cause do not upon their face show fraud, and as a matter of fact are without fraud or attempt to defraud the petitioners or any other person; that the proceedings are *bona fide,* just, and true legal proceedings; they deny that the court has been misinformed as to any particular, fact, or matter embraced in the proceeding; they further deny that the assets of the defendant corporation are worth $150,000 and that the accounts receivable of the defendant corporation are collectible within a period of two years, but say that said accounts are collectible only to a very limited extent over any period of time, and that many of the individual accounts are by contract bound to run over a period of thirty months from the date of the institution of these proceedings; that the purchase price received by the receivers herein for the said accounts and other assets of the defendant corporation was a fair market value thereof at the time of the sale; that nothing has been done by any of the parties to these proceedings to mislead the court, but that all pertinent facts are correctly disclosed on the face of the proceedings; that none of the officers of the plaintiff corporation or their relatives are common creditors of the defendant corporation. They further deny that a fraud was perpetrated upon the court in presenting the petition for the sale of the defendant corporation's assets, or that the court was informed that all interested parties had been satisfied. Answering further, they say that the receivers acted in no more hurried way than was conducive to the best interest of the plaintiff corporation and the defendant corporation and its creditors, and to the securing of a fair price for the saleable assets of the defendant corporation, and that the said defendant corporation was continually losing money in operating its business, and these proceedings were necessary for the protection of the plaintiff corporation as well as for all other creditors of the defendant. A denial was also made that the plaintiff and defendant cor-

porations are one and the same, or have ever been conducted, operated, or managed as one, or that joint directors' and stockholders' meetings of the two corporations have ever been held, or that the defendant corporation has been operated and directed by the plaintiff corporation; but admit that some of the directors of the plaintiff corporation are and have been also directors in the defendant corporation; and further admit that the answer of the defendant corporation was prepared by the attorneys for the plaintiff corporation, but assert that the said answer is *bona fide,* true, and fair. The answer in conclusion alleges that the receivers have acted *bona fide* and have carried out their duties as such in a fair, reasonable, honest, and careful manner, to the best of their ability, and without fraud or attempt to defraud the petitioners or any other persons; and, further, that the defendant corporation is insolvent and unable to pay its debts as in the original petition alleged, and that the petitioners are not creditors of the defendant corporation, and therefore have no interest in these proceedings, and should have none of the relief prayed in their petition.

Upon the petition of the appellants to intervene, and the answer thereto by the appellees, after hearing testimony the taking of which consumed two days, the court on March 19th, 1932, filed its opinion and order dismissing the petition. It is from that order the appeal here is taken.

It appears from the docket entries, that, although the appeal was taken, the appellants did not then, and have not since, filed any appeal bond. Subsequent to the appeal, the receivers' final report was filed June 28th, 1932, and the auditor's final report and account was filed on that day and finally ratified on July 13th, 1932; that the release and receipt of M. P. Moller, Inc., to the receivers was filed July 25th, 1932, and recorded.

The appellees on November 9th, 1932, filed a motion in this court to dismiss the appeal, for the following reasons: (1) That the record was filed in the appellate court on August 16th, 1932, and the costs for printing the record

were not paid within ten days after the receipt of the bill sent by the clerk of this court to the appellants, and no extension of time in which to pay said costs has been had by agreement of counsel or by this court; (2) that the record in the appellate court shows that the receivers have paid and distributed all of the assets in their hands as such receivers; that the second and final report and account of the auditor of the Circuit Court for Washington County was finally ratified on July 13th, 1932, and there was filed in said cause on July 25th, 1932, the release and receipt of M. P. Moller, Inc., the purchaser at the sale, to said receivers; that the appeal in this case was entered on May 18th, 1932, and no appeal bond was filed by the appellants at any time, all of which will appear by reference to the docket entries set forth on page 130 of the record; that the questions involved in this appeal have therefore become moot, and there is no substantial question to be determined by this court; and that any decree passed by this court in the matter would be without effect and nugatory.

In view of the fact that the record was printed and ready for argument in this court when the case was called on November 15th, thereby indicating that the costs must have been paid, it is unnecessary to consider the ground first alleged as the basis for dismissal of the appeal.

Turning now to the second ground, namely, that a decision by this court reversing the order of the lower court, dated March 19th, 1932, would avail the appellants nothing and be a nugatory decision, thereby rendering the question now sought to be determined a moot one: The appellants are minority stockholders in the M. P. Moller Company, the defendant in the original proceeding, owning, as is conceded, twenty-five per cent. of the stock in that corporation. Upon a bill filed by M. P. Moller, Inc., the defendant was alleged to be insolvent and unable to pay its creditors. The prayer of that bill was for the appointment of receivers to take charge of its assets, dispose of them, and distribute the proceeds among the creditors under the supervision and orders of the court. To this bill of complaint the defendant cor-

poration, by answer, admitted the insolvency and submitted its rights to the protection of the court. Both the bill of complaint and answer were sworn to by proper officers of the respective corporations. The chancellor, upon bill and answer, appointed receivers with power and authority to possess themselves of and liquidate the assets of the defendant corporation, this to be done after filing an approved bond. Subsequently the bond was filed, possession taken of the assets, and appraisal of the tangible property of the defendant corporation made by the receivers. They then filed a petition setting forth the assets of the corporation and their probable value; at the same time, in said petition, informing the court of an offer made by the plaintiff corporation, M. P. Moller, Inc., to purchase all of the assets of M. P. Moller Company, then in the hands of the receivers, for the sum of $41,324.83, which sum the receivers believed to be a reasonable and fair price for said assets, and asked that they be given authority to make the sale. Filed with this petition, as a part thereof, was the offer in writing made by M. P. Moller, Inc., wherein it was agreed that, in event of sale in accordance with said offer, M. P. Moller, Inc., agreed that out of the proceeds of sale all other creditors of the defendant corporation should be paid in full by the receivers before it should be given anything on account of its debt. Also filed as a part of the receivers' petition was a certificate or statement by the defendant corporation reciting that it had been fully apprised by the receivers of the offer to purchase the entire assets of the defendant corporation by M. P. Moller, Inc., and the price and conditions of said purchase; that it believed the sum so offered was probably more than the receivers could realize by attempting to collect the outstanding accounts on conditional sales contracts, and sale of the tangible property, and therefore recommended that the chancellor authorize and empower the receivers to accept the offer of M. P. Moller, Inc.

Upon this petition of the receivers, with the accompanying exhibits, the chancellor passed an order authorizing and empowering the receivers to make the sale under the terms

and conditions set forth. This order was passed on February 5th, 1932; and the petition of the appellants to intervene was filed on February 24th, 1932. The relief sought by the appellants in that petition was to be allowed to intervene and be made parties defendant so that they might answer the original bill for receivership, and that the order for sale of the assets of the defendant corporation be rescinded.

The question of the solvency of the defendant corporation is the one of greatest import, because, if the defendant corporation was in fact insolvent and unable to pay its creditors, minority stockholders would be entitled to and would receive nothing from the proceeds of sale. After giving the appellants full opportunity to be heard, which hearing consumed two days before the chancellor, he found that the defendant was insolvent, and dismissed the appellants' petition to intervene. The appeal, therefore, can only bring before this court for review the validity of the order appealed from, and which validity depends upon the insolvency *vel non* of the defendant corporation. No appeal bond was filed, and the proceedings by the receivers were continued and concluded by a final disposition of the proceeds arising from the sale, in the same manner as if no appeal had been taken. The question thus raised is: What effect could a reversal of the chancellor's order of March 19th, 1932, denying appellants' right to intervene, now have upon the property of the M. P. Moller Company, the original defendant corporation, all of which property having been converted into cash and distributed among its creditors? Section 33 of article 5 of the Code provides: "No appeal from any decree or order shall stay the execution or suspend the operation of such decree or order, unless the party praying the appeal shall give bond, with security, to indemnify the other party or parties from all loss or injury which said party or parties may sustain by reason of such appeal and the staying the execution or operation of such decree or order." This section has been more than once passed upon by this court; and it is now firmly established that an appeal from an order of a court of equity directing the sale of property does not stay

the proceedings unless an appeal bond is filed or a stay secured from the lower court. *Blondheim v. Moore,* 11 Md. 371; *Everett v. State,* 28 Md. 190, 206; *Crownfield v. Phillips,* 125 Md. 1, 92 A. 1033; *Wampler v. Wolfinger,* 13 Md. 337; *Middendorf v. Refrigerating Co.,* 117 Md. 17, 82 A. 1047; *Forbes v. Warfield,* 130 Md. 406, 100 A. 630; *Konig v. Baltimore,* 128 Md. 475, 97 A. 837; *School Commrs. v. School Commrs.,* 77 Md. 283, 26 A. 115; *Raith v. Bldg. & Loan Assn.,* 140 Md. 542, 118 A. 67; *Shirk v. Soper,* 144 Md. 269, 124 A. 911; *Holloway v. Safe Dep. & Tr. Co.,* 152 Md. 289, 136 A. 269. The only effect of a reversal of the order appealed from would be to hold that the appellant had a right to intervene in a case which had been concluded and disposed of before the record of appeal had reached this court. The proceedings taken by the appellees, after the passage of the order appealed from, were in no manner stayed or delayed in this case by the taking of the appeal. A stay could have been secured in either of two ways: First, by an order of the lower court to that effect; and, second, by filing an appeal bond, which would also effect a stay unless the court by order had directed that the appeal should not stay, even though the bond had been filed. Cases cited *supra.* As any judgment which this court might now render would be ineffective and nugatory so far as affording relief to the appellants, the appeal will have to be dismissed. *Thom v. Cook,* 113 Md. 85, 77 A. 120; *Jones v. Montague,* 194 U. S. 147, 24 S. Ct. 611, 48 L. Ed. 913; *Mills v. Green,* 159 U. S. 651, 16 S. Ct. 132, 40 L. Ed. 293; *Syfer v. Spence,* 103 Md. 66, 63 A. 256; *Alvey v. Hartwig,* 106 Md. 254, 67 A. 132; *Smith v. Warrenfeltz,* 116 Md. 116, 81 A. 275; *Close v. Southern Md. Agric. Assn.,* 134 Md. 629, 108 A. 209; *Pub. Serv. Comm. v. Telephone Co.,* 147 Md. 279, 128 A. 39; *Sheehy v. Thomas,* 155 Md. 688, 142 A. 506; *Baldwin v. Telephone Co.,* 156 Md. 552, 144 A. 703. On the appellants' petition to intervene, the chancellor permitted them to go fully into the question of the solvency of the defendant corporation, and determined upon that evidence that it was insolvent. After examining the evidence

with great care, we are convinced that the chancellor's finding on this point is correct. The defendant corporation being insolvent and unable to pay its creditors in full, the appellants, being stockholders, could receive no portion of the proceeds of sale until all creditors were paid in full.

*Appeal dismissed, with costs to the appellees.*

---

BOND, C. J., filed a dissenting opinion as follows:

The case should be disposed of, I think, by an affirmance of the order appealed from rather than by a dismissal of the appeal; and the distinction seems worth making in this instance because disposition in the one way or the other represents the answer to an important question of power in the courts.

The sale referred to as having rendered the case moot was the culmination of a proceeding, the whole of which, including the sale, was attacked as an unfair, improper, maneuver of the plaintiff, who is itself the purchaser and distributee of the proceeds. While completion of the sale pending the appeal was not stayed, that fact did not, of course, affect the right of appeal from the dismissal of the interveners' petition. "The right thus conferred is unconditional and does not depend upon the filing of an appeal bond." *Shirk v. Soper*, 144 Md. 269, 283, 124 A. 911, 916. The right of the interveners to their appeal and review of the order appealed from, and to reversal of the order, if found erroneous, remained as full and unaffected by the carrying out of the sale and distribution as if a bond had been filed, unless the case should be one of those in which carrying out orders and decrees pending appeals renders relief from error, if any, no longer feasible; and I think it is not one of those.

If, pending an appeal, without stay, from refusal to enjoin a cutting down of trees, the trees are felled, judicial action could not put the trees up again; it would be nugatory; and an appeal seeking the relief might be dismissed as having now no possible object. It is for the same reason that when,

pending an appeal without stay of execution, a sale has been completed to a *bona fide* purchaser, one not involved in any impropriety charged, the sale cannot be set aside upon establishment of the fact of impropriety in bringing it about, and error in the order appealed from. Even in such cases the courts are not always rendered powerless, because often the proceeds of sale remain susceptible of distribution in a manner that will remedy the impropriety and error, and the case must then be disposed of on the merits with that possibility of remedy in view, and not by dismissal of the appeal. *Chase v. McDonald*, 7 H. & J. 199; *Wampler v. Wolfinger*, 13 Md. 337, 348; *Lenderking v. Rosenthal*, 63 Md. 28, 38; *Garritee v. Popplein*, 73 Md. 322, 324, 20 A. 1070; *Raith v. Bldg. & Loan Assn.*, 140 Md. 542, 545, 118 A. 67; *Herman v. Bldg. & Loan Assn.*, 145 Md. 480, 490, 125 A. 814, 817; *Bowers v. Soper*, 148 Md. 695, 698, 130 A. 330. But, as is stated in these cases just cited, there is no obstacle to undoing a completed sale made, not to a *bona fide* purchaser, but to a party shown to have itself brought about the sale unfairly. "But even though the appeal bond be not seasonably filed, the rule is not available to protect a title vested under a purchase which has been unfairly accomplished." *Herman v. Bldg. & Loan Assn.*, *supra*. When the ground of attack is impropriety or unfairness in bringing about the sale, as in this case, it is a matter of indifference whether execution has or has not been stayed, for the courts may undo the sale as effectually as they might prevent one not yet completed. Finding the wrong, then, with the parties to it before them and no third parties to be considered, they can right that wrong at whatever stage it may have reached.

I see no basis for distinguishing the sale and distribution in this case from others attacked as having been unfairly accomplished by purchasers, and think, therefore, that the court needs to pass on the merits of the attack exactly as it would if an appeal bond had been filed. The order is shown to have been free from error, and for that reason should be affirmed.